The plaintiff, Mrs. John Joseph Ryan, sues to recover the sum of $40,000, $10,000 for herself and $5,000 for each of her six minor children, on account of the death of John Joseph Ryan, her husband and father of said minor children, on January 26, 1939. The deceased husband and father was killed when the steam boat Calla, owned by defendant, collided with a gasoline motor boat owned and operated by Joe Wild on Tickfaw River, the deceased being a guest, passenger or occupant of the motor boat.
The trial court rendered judgment in favor of the plaintiff in the sum of $11,000, apportioned on the basis of $2,000 for her individually and $1,500 for each of her six minor children. The defendant has appealed.
The allegations of the petition, in substance, are as follows: That the motor boat (hereafter referred to as the motor boat) in which the deceased was riding with Joe Wild, W.E. Wild and C.B. Johnson was going down the Tickfaw River to the left of the center of the stream and near the left or east bank about 5:30 A.M. on January 26, 1939; that the motor boat was carrying a lighted lantern so that it could be seen by other boats in the river; that said motor boat was traveling on a straight reach of the river when the defendant's boat (hereafter called the Calla) rounded a bend coming up the river near *Page 264 
the east bank on the same side as that of the motor boat; that the motor boat drew nearer to the left hand bank in order to let the Calla pass in the center of the stream, but instead of turning to the west or toward the center of the stream and away from the motor boat, the Calla continued to hold the east bank of the stream; that notwithstanding the operator of the motor boat pulled it sharply to the left so that it was within 20 feet of the east bank, the Calla continued to pull steadily to the right and ran over the motor boat in which the deceased was riding, crushing his skull, and then running on into the east bank of the river. The allegation is then made that the operator of the motor boat did all within his power to avoid the collision by pulling sharply into the east bank of the river, but the operator of the Calla continued to bear to his right when by staying in the center of the stream he could have avoided the accident.
The defendant filed an exception of no cause or right of action, which exception, we are informed by the briefs of counsel although not appearing in the minutes, was overruled by the court.
The answer denies any negligence on the part of the operator of the Calla, and alleges that the Calla was ascending the right side of the river when the captain saw two white lights some distance ahead in about the center of the river; that, not receiving any signal from said approaching boat, the captain of the Calla altered the course of his boat toward the right ascending bank of the river, and as the boats approached each other, the motor boat altered its course toward the east bank of the river and finally turned sharply and in front of the Calla; that the captain of the Calla thereupon had his engine stopped and steered his boat as far to the right as possible, but the motor boat continued across the bow of the Calla, causing the boats to collide near the east bank.
In the alternative, it is alleged that if the court should hold that the operator of the Calla was in any manner negligent, the defendant "pleads contributory negligence on the part of the operator of the other boat, in failing to have the said boat properly lighted and equipped, and in negligently operating it, as aforesaid, in all of which negligence said deceased Ryan concurred, and which said negligence contributed not to any admitted negligence on the part of your respondent, but directly to said accident."
 Exception
The exception of no cause or right of action is based on the ground that the petition affirmatively shows that the operator of the motor boat in which the deceased was riding was violating the rules of navigation on inland waterways prescribed by Congress, U.S.C.A., Title 33, Section 210, Art. 25, which reads as follows:
"In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."
Assuming that the above regulation applies to the motor boat in which the deceased was riding and to the Tickfaw River, there is nothing in the petition to show whether or not it was safe and practicable for this motor boat to keep to the right of the mid-channel of the stream. Moreover, the petition presents a state of facts where the doctrine of last clear chance might be applicable, as will be stated hereafter, and if contributory negligence on the part of the deceased could be inferred from the petition, there still might be liability if the facts justified the application of the last clear chance doctrine. In order for an exception of no cause or right of action to be maintained on the ground that the petition shows contributory negligence on the part of the injured person, the facts set up in the petition must affirmatively show that the negligence of the injured person was the proximate cause of the accident and that he could not secure any of the relief for which he prays, if he proves all of his allegations. Pittman v. Gifford-Hill Co., Inc., et al., La.App., 188 So. 470, and cases there cited.
 Merits
The Tickfaw River at the point of the accident is 454 feet wide, and the collision occurred 15 or 20 feet from the east bank where the water is from 4 to 6 feet deep. The deep water of the river where the larger boats usually travel begins some 30 feet or more further west and toward the center of the channel. The Calla is a steamboat measuring a little over 60 feet in length and 22.6 feet in width, with a depth of 4.4 feet. The motor boat in which the deceased was riding was about 20 feet *Page 265 
long and had in tow a flat boat about 16 feet long. From the above description of the river and the two boats, it is obvious that there was not only ample room for them to pass in safety on this wide river but there was sufficient room for them to pass on that part of the river east of mid-channel. Certainly, these two boats could have passed each other in that part of the river east of mid-channel, a space more than 250 feet wide, had the operators of the boats been taking proper precautions.
The three men in the motor boat with the deceased testified, in substance, that they saw the Calla about one-half mile down stream as they turned a bend in the river; that the motor boat pulled to its left to within 25 or 30 feet of the left bank; that they had a lantern burning on their boat which was visible to any one coming up stream; that the Calla continued to pull over to its right toward the east bank, and the motor boat also pulled further to its left, and when the Calla got close to the motor boat, the latter was pulled further to the left to get closer to the east bank and out of the way of the Calla, but the latter struck the motor boat almost broadside on its right side, throwing the deceased under the Calla where he was crushed to death and his body recovered a few hours afterwards.
We can hardly understand how the motor boat came a quarter of a mile or so after passing the bend within 25 or 30 feet of the east bank to within a short distance of the point of collision where the boat was turned more sharply to its left and got within 10 or 15 feet of the bank before being struck. The whole testimony of these three witnesses leads us to conclude that after rounding the bend the motor boat was pulled toward the center of the stream and while traversing the distance between it and the Calla the motor boat was steered gradually toward the left bank in order to pass the approaching Calla in the shallow water near the east bank. When the operator of the motor boat saw that the Calla continued to pull toward the left bank in front of his boat, he pulled more sharply to his left and reached a point 10 or 15 feet from the east bank in shallow water when his boat was struck on its starboard side by the Calla. The fact that the collision occurred in shallow water is evident for the reason that the Calla grounded on the east bank just after it struck the motor boat.
The master operating the Calla testified that he saw two lights on the motor boat as it came around the bend about one and a half or two blocks from him; that he was on his right side of the river about 30 feet from the center; that when he saw the lights of the motor boat, it was on its right hand side of the stream going down, and turned to its left toward the center of the river as it approached; that he continued to pull the Calla to his right and the other boat continued to come over on his side of the river, and when he saw that there was about to be a collision, he gave the signal to stop the engine, but the Calla struck the motor boat on its side about 15 feet from the east bank, and he pulled the Calla into the bank.
This account of the accident given in court by the master of the Calla is not consistent with defendant's answer nor the sworn statement which he gave at the inquest. In the answer, it is alleged that the master of the Calla saw these two lights "some distance ahead in about the center of said river" (and not on the right descending side as he testified); that as the boats approached each other, the motor boat "altered its course towards the right ascending side of the river and finally turned sharply and immediately in front of said `Calla'" (whereas the master testified that the motor boat cut across the middle of the stream to its left when it was about 30 feet from the Calla).
But the greatest conflict in the master's testimony is that given by him in court and his sworn statement before the coroner's jury just after the accident. An extract from that statement will show the glaring difference in his two accounts of the accident. We quote from his sworn statement at the inquest:
"When I first saw the lights they were probably 200 yards ahead of me. The lights were coming straight down the river. When about 70 feet ahead of me the approaching boat cut across my bow to the left. When the boat cut across my bow it looked as if I could not keep from hitting it and I put my boat into the bank to try to prevent a collision. In putting my boat into the bank I was not able to prevent the collision."
The significant part of this statement is that the motor boat cut across the bow of the Calla when it was about 70 feet away. There is no evidence in the record to show what distance was required for the Calla to *Page 266 
stop going 7 or 8 miles per hour as it admittedly was going at the time. Nor is there very clear and satisfactory testimony to show just what effort was made by the master of the Calla to avoid the collision after he saw or should have seen that there was about to be a collision. Neither do we find any explanation as to why the master of the Calla did not slow down his boat or bring it under control after he saw the other boat on the wrong side of the river and in a position from which it could not well extricate itself without some danger if it undertook to get in the deep water of the main channel or attempted to get back on its right side.
Where two boats are in a navigable river and one of the boats is in a position of danger and cannot well avoid a collision because of its location or condition, the other boat is required to use all reasonable precautions to keep from colliding with it. Saune v. Tourne Beckwith, 9 La. 428, 29 Am.Dec. 452; Enders et al. v. The Henry Clay, 8 Rob. 30; Martino, Curator, v. Boggs et al., 1 La.Ann. 74. The preponderance of the evidence in this case shows that the master of the Calla did not have the engine cut off until the collision had occurred.
Assuming that the operator of the smaller boat was negligent in pulling the boat to his left side of the river and in traveling on that side contrary to the rules of navigation which we have quoted, his negligence was such that it placed his boat in a position on the river from which it could not easily be steered to the other side in time to avoid the collision, and this negligence had become passive or secondary when the collision occurred. Under this situation it becomes proper to determine whether or not the master of the Calla had the opportunity of avoiding the collision under the last clear chance doctrine as announced in numerous decisions of the courts of this State, and particularly in the case of Jackson v. Cook, 189 La. 860,181 So. 195. However, as already stated, the evidence in the record does not enable us to determine with the required degree of legal certainty whether or not the master of the Calla saw or should have seen the dangerous situation of the motor boat in time to avoid striking it and whether or not he could have stopped the Calla or steered it a different course so as to avoid the collision.
In the interest of justice, we have decided to exercise the discretion given us under Article 906 of the Code of Practice and remand the case for further testimony. And in this connection, we may state that there is not sufficient evidence in the record to enable us to determine whether or not the deceased "concurred in" the alleged negligence of the operator of the motor boat as set out in the answer. Other than a statement by Johnson that he was in the boat on a pleasure trip, there is nothing to show whether the deceased Ryan was on the motor boat as a guest of Joe Wild, as a partner, in a joint venture with him, or just what the deceased had to do with the operation of the motor boat, so as to have its negligent operation imputed to or concurred in by him. See Luke et ux. v. Morgan's Louisiana 
T.R. S.S. Co., 147 La. 30, 84 So. 483.
Furthermore, there is hardly sufficient evidence in the record to properly fix the amount of damages in case defendant is found liable. Other than the statement of the widow that the deceased was 49 years of age, in good health and was supporting her and the children, we are not informed as to his earning capacity and the nature of his work.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby reversed and set aside, and it is now ordered that the case be remanded to the district court to be proceeded with according to law and the views herein expressed.