This is a suit for damages brought by the widow of John Joseph Ryan for herself and as tutrix of her six minor children for the death of her husband and father of her minor children, which resulted from a collision in the Tickfaw River on January 26, 1939, between defendant's steamboat Calla and a gasolene motor boat owned and operated by Joe Wild, in which the deceased was an occupant.
The case was first tried before the late Judge Hypolite Mixon, who rendered judgment in favor of the plaintiff in the sum of $11,000, of which $2,000 was for her individually, and $1,500 for each of her six minor children. From this judgment the defendant appealed to this Court and we reversed and set aside the judgment and ordered that the case be remanded to the District Court to be proceeded with according to law and the views expressed in our opinion reported in 2 So.2d 263. In that opinion we expressed the view that the evidence needed elucidation generally and particularly with reference to the position of the boats before and at the time of the collision, and as to whether or not the deceased had any control or direction of the motor boat of which he was an occupant and as to that part of the case dealing with the quantum of damages.
On the remand, the case was again tried, this time before Judge Kilbourne. By stipulation all of the previous testimony was reintroduced in the second trial. The same witnesses were called again and testified more extensively, in line with our opinion aforesaid. The second trial resulted in a judgment in favor of plaintiff, in the sum of $10,000, of which $4,000 was for her individually, and $1,000 for each of her six minor children. Defendant has again appealed. Plaintiff, individually and on behalf of her minors, has answered the appeal, praying for an increase to the amount originally demanded.
We have fully analyzed the pleading in our prior opinion and it seems unnecessary to do so again. Also, in our prior opinion, we disposed of the exception of no cause or right of action, so that in the present appeal the case comes to us purely on the merits and on the following issues:
First, was the collision between the Calla and the motor boat caused solely by the negligence of the master and pilot of the Calla?
Second, was the collision caused solely by the negligence of the owner and operator of the motor boat?
Third, if both the operator of the Calla and the operator of the motor boat were guilty of negligence, was the negligence of each a proximate cause of the collision?
Fourth, if the negligence of both constitutes a proximate cause of the collision, was the status of the deceased such as to render him guilty of contributory negligence and to thereby bar plaintiff's recovery?
Fifth, on determination of the foregoing issues, if it be found that plaintiff is entitled to recover, what is the quantum of damages?
To decide the issues involving liability it is necessary to determine the respective courses of the two boats and the actions of the operators thereof. With reference to the course pursued by the motor boat the defendant urges that, whereas at the first trial plaintiff's witnesses, occupants of the motor boat, all testified that they were at all times holding the east bank of the river, which was on their port side or left side, at the second trial they changed their testimony and testified that they started out on the west bank and cut across to the east bank of the river. This was one of the phases of the case on which the testimony was confusing at the first trial and which formed in part the purpose of our remand. Considering the complete record, we feel that the preponderance of the evidence establishes the following situation: The Calla and the motor boat, traveling at about 6 A.M. while it was still dark, came in sight of each other at a distance of approximately one-half mile as each was negotiating a bend in the river before entering a one-half mile straight stretch. The Calla, proceeding upstream, negotiated the bend in approximately the center of the stream and thereafter proceeded to its starboard side, or east side of the center of the stream. The motor boat negotiated the bend proceeding downstream on its right or starboard side or west side of the center of the stream and thereafter angled over towards the left side, or its port side of the stream *Page 851 
and continued to travel towards that side. As the two boats got nearer to each other the motor boat continued angling towards the east bank, which was on its left, and the Calla also continued (angling) towards the east bank, which was on its right, and just prior to the collision, they both cut sharply towards the bank, the collision occurring within 15 or 20 feet from the bank. The motor boat was struck in the collision on its right side and the deceased and the other occupants of the motor boat were thrown into the river. About one hour after the collision the body of the deceased was found in the river and it was discovered he had sustained a crushed skull and other injuries, which no doubt caused his death. It is also shown that the straight stretch of the river wherein the collision occurred was some 454 feet wide and had a depth of 20 feet or more from its center to within 30 feet of its banks, where it became more shallow, the point of collision being not more than 6 feet in depth. It is shown, further, that the motor boat carried one light, a lantern, held by one of the occupants, and had no whistle, bell or other means of giving signals, and that the Calla was well equipped with lights, and means of signalling. It is shown that the Calla failed to give any signal whatsoever to the motor boat of its intended maneuvers, and that, in fact, the only signal given by the Calla was a bell signal to the engineer to cut off the motor almost at the instant of the impact, and that up to that time the Calla had proceeded at its top speed, or almost at that rate, of seven miles per hour. It is shown that the speed of the motor boat was about 6 miles per hour. The master of the Calla testified in effect that he did not even blow for these little motor boats, which are all up and down the river all during the night, implying that for any other kind of boats he would signal to let them know how they were going to pass each other.
Under these facts, it is our opinion that both the operator of the Calla and the operator of the motor boat were guilty of negligence and that the negligence of each was a proximate cause of the accident.
The defendant tries to extricate itself from the charge of negligence on the ground that the master of the Calla was following the rules of navigation on inland waterways prescribed by Congress. U.S.C.A., Title 33, Section 210, Article 25, which reads as follows: "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel.", and to place the whole fault on the operator of the motor boat for not following the said rule. The position of the defendant in that connection, in view of the circumstances in this case, is very similar to the position of an automobile driver who relies too much on his right of way and becomes almost insensible to the actions of other drivers on the highway. It is very true that the operator of the motor boat violated the above quoted rule of navigation by steering his boat on his port side in the manner in which he did and it is our opinion that his negligence contributed to the accident, although we feel that the accident could have been avoided by the master of the Calla if he had not insisted too much on following the aforesaid rule of navigation. It is shown that a period of fully five minutes elapsed during which the master of the Calla saw, or should have seen, the faulty maneuvers of the motor boat and yet it appears that he did nothing about it, except to continue to bear to his right or starboard side in accordance with the said rule, not even blowing the whistle of his boat to give any kind of signal. We do not feel that this maneuver of the master of the Calla was "safe and practicable", as provided by the rule, and it does seem that the collision could have been avoided, in spite of the negligence of the motor boat operator, if the master of the Calla had steered his boat in its original course within about 30 feet of the east of the center of the river, or if, when confronted with the emergency, at the last moment before the collision, he had cut his boat to his left instead of to his right, and, in any event, he could at least have given some signal of his intentions. The defendant contends that the operator of the motor boat cut directly in front of the Calla just prior to the collision, whereas plaintiff contends that the motor boat left the west side of the river at the bend and gradually angled nearer and nearer to the east bank. Plaintiff's contention seems more reasonable in that it does not appear any more plausible to believe that the motor boat came directly and suddenly from the west to the east than to believe that the Calla proceeded suddenly towards the east bank. In any event, it is testified by the master of the Calla that he had sufficient time, even at the last moment, to cut his boat suddenly to the right, and there is no reasonable explanation why he could not have cut his boat to the left instead of to *Page 852 
his right, and thereby have avoided the collision, except his desire to follow the rule of navigation quoted supra.
Having concluded that the collision was caused by the negligence of both the operator of the Calla and the operator of the motor boat, plaintiff can, of course, recover from either the defendant, owner of the Calla, or the operator and owner of the motor boat, who are joint tort feasors, or both of them in solido, unless the negligence of the operator of the motor boat can be imputed to the deceased. As far as the pleadings are concerned, there are no allegations of imputation of such negligence. However, it appears to us that this question can be considered, because there was testimony introduced on the point which was not objected to and which enlarges the pleadings to that extent. There was an attempt made to show that the deceased was engaged in some sort of joint venture or enterprise with the owner of the smaller boat, but the most that has been shown in that connection is that occasionally the deceased and the father of the operator and owner of the motor boat used to go fishing together, and when successful in catching more fish than their family needs required, they sold the excess and divided the money. On the morning of this accident the deceased had been invited by the father of the motor boat owner to go with them and look for some fishing grounds. To do so they went on Joe Wild's boat. He was in entire charge of it and directed its movements. The deceased had nothing whatever to say about the manner in which it was operated and had nothing to say over what part of the river they would travel. Therefore, under the tests laid down to decide the question of joint venture or joint enterprise, he could not in any sense of the term be said to have been so engaged with Joe Wild, the owner and operator of the motor boat. The latter's negligence could not be imputed to him and could not operate as a bar to his widow's recovery for herself and her minor children.
With reference to the quantum of damage, we find no error in the finding of fact by the trial court to the effect that Mr. Ryan was a healthy, physically capable man of approximately 50 years of age; that at the time of his death he was engaged in trapping; that from time to time he worked on the highway; that he engaged in some farming and had done some commercial fishing; and that while his average monthly earnings did not exceed $70, he did manage to adequately feed and clothe his family and send his children to school. Moreover, it is clear from the evidence that the deceased was a good, kind and dutiful husband and father and that his death was a serious blow to his family. Under these facts, we feel that the award by the District Court is reasonable and should not be disturbed.
For these reasons assigned, the judgment appealed from is affirmed.